[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 25, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11597
Non-Argument Calendar
_____

D. C. Docket No. 04-00377-CV-CAR-5

EARL BOND,

Plaintiff-Appellant,

versus

DEPARTMENT OF THE AIR FORCE,
et al.,

Defendants,

PETE GEREN,
Secretary of the Air Force,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(October 25, 2006)**

Before ANDERSON, BIRCH and HULL, Circuit Judges.

PER CURIAM:

Earl Bond, proceeding pro se, appeals the district court's dismissal of his employment discrimination action. After review, we affirm.

## I. BACKGROUND

Because the district court dismissed Bond's complaint for failure to timely pursue his administrative remedies, we first outline the events in the administrative process and then what happened in the district court.

**A.     Administrative Process**

Bond, an African American male, was employed under a collective bargaining agreement as an Electronic Integrated Systems Mechanic at Warner Robins Air Force base, where he worked on C-141 jet airplanes. On November 1, 1999, Bond signed a statement of understanding indicating that he would be subject to random drug testing due to the sensitive and important nature of his employment and the flight safety concerns related to his job. On May 30, 2001, Bon was administered a random drug test that yielded a positive result for marijuana use. Bond's results were reported on June 2, 2001.

When Bond was informed of the results, he submitted an affidavit from a relative stating that Bond had been tricked into eating a marijuana-spiked cookie.

2

On June 30, 2001, Bond's removal was proposed. In a written response, Bond claimed he had become very drunk and his drinking had caused him to use marijuana. Bond was terminated effective October 12, 2001.

Bond grieved his termination on October 18, 2001, pursuant to his collective bargaining agreement, on grounds that termination was too harsh a sanction. The Installation Commander at Warner Robins denied the grievance. On December 21, 2001, union officials invoked arbitration on Bond's behalf. The arbitration hearing was held on August 26, 2002. On November 15, 2002, the arbitrator issued a decision sustaining Bond's termination.[1]

On November 19, 2002, Bond received correspondence dated November 15, 2002, from his union counsel advising of the arbitrator's adverse decision. In the letter, Bond's counsel stated that the arbitrator had found that the Air Force has a "consistent policy of firing just about everyone in a testing designated position who tests positive for drugs." The letter also enclosed a copy of the arbitrator's decision. In the decision, the arbitrator stated, inter alia, that "Employee Relations Chief, Fluellen, testified that all but 1 or 2 unique cases at the base have resulted in termination, and no case in Avionics – Bond's division – has been mitigated."

---

[1] On December 23, 2002, Bond appealed the arbitrator's decision to the United States Court of Appeals for the Federal Circuit. On January 23, 2003, Bond's appeal was dismissed for failure to pay the docketing fees.

Thus, the arbitrator's decision acknowledged Fluellen's testimony that one or two Air Force employees had not been fired after a positive drug test.

After receiving this letter on November 19, Bond claims that he gave the arbitrator's decision and the letter to a third party who contacted Bond on the same day. According to Bond, this unidentified third party "had inside knowledge of [the Air Force's] history of racial discrimination through covert and subtle means." The third party pointed out to Bond the statements in the arbitrator's decision about Fluellen's testimony and suggested that the referenced testimony gave rise to an appearance of disparate treatment. Bond contended that it was only after this conversation with the third party that Bond was "alerted to the possibility" that the facially neutral drug policy was being applied in a racially discriminatory manner.

After speaking with the third party, Bond went to the Air Force's Equal Employment Office ("EEO") counselor and allegedly first complained of discrimination on January 2, 2003. Before filing an employment discrimination action, federal employees are required to file a formal complaint with the agency – here, the Air Force – that allegedly discriminated against them. 29 C.F.R. § 1614.106(a). Under the administrative process, the federal employee must initiate contact with an EEO counselor at the agency within 45 days of the effective date of the allegedly discriminatory personnel action. 29 C.F.R. § 1614.105(a)(1).

4

However, the 45-day time limit shall be extended if the employee "did not know or reasonably should not have known that the discriminatory matter or personnel action occurred . . . ." 29 C.F.R. § 1614.105(a)(2).

The Air Force's EEO counselor initially refused to accept Bond's complaint, which contained allegations of disparate treatment based on race. However, this decision later was reversed, and his complaint was accepted.

The Air Force ultimately dismissed Bond's complaint on grounds that Bond was terminated in October 2001 and did not contact the EEO counselor within the required 45-day period. Rather, Bond first contacted the EEO counselor on January 2, 2003. The Air Force also dismissed Bond's complaint because he had elected to pursue his remedies through the union-grievance-arbitration process and could not now proceed through the Equal Employment Opportunity Commission ("EEOC")-Title VII process.

Pursuant to 29 C.F.R. § 1614.405, Bond appealed the dismissal of his complaint to the EEOC's Office of Federal Operations. On May 20, 2004, the EEOC affirmed the Air Force's decision to dismiss Bond's complaint for the reasons given by the Air Force. Bond filed a request for reconsideration, which the EEOC denied on August 3, 2004.

## B. District Court Proceedings

Bond then filed this employment discrimination action in federal district court. Bond's pro se complaint alleged disparate treatment discrimination and retaliation on the basis of his race, color, sex, and age, by the Air Force in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5, 2000e-16c, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a).[2] Bond's complaint alleged that, in October 2001, he was terminated from his job at Warner Robins Air Force Base for violating the Air Force's drug policy. According to Bond, "others who violated . . . the drug policy were allowed to remain employed." The complaint also alleged that, on January 2, 2003, Bond filed charges with the EEOC and received his right to sue letter on August 7, 2004.[3] In other words, on the face of Bond's complaint, it appeared that Bond had waited until fourteen months after he was terminated to file his discrimination complaint.

In accordance with local rules, the parties submitted a proposed scheduling and discovery order. In the proposed order, Bond, among other things, stated that the Air Force had retaliated against him by refusing to process his EEO complaint

---

[2]Bond's complaint also named General Dennis Haines, Michael O'Hara and Steven Davis as defendants. The district court dismissed these individual defendants on the grounds that they were not proper defendants under Title VII or the ADEA. Bond does not challenge this ruling on appeal.

[3]Attached to Bond's complaint was a copy of the EEOC's August 3, 2004 decision denying Bond's request for reconsideration.

and that the Air Force had "only processed the complaint after being compelled to do so by the former office (USAF/MR) of the now Acting Secretary of the Air Force, Michael L. Dominguez." The district court entered the proposed scheduling order.

Bond filed a motion to amend the scheduling order, seeking to add a statement about his allegations that the Air Force had retaliated against him by refusing to promptly process his EEO complaint. The district court denied this motion as moot, noting that identical language about Bond's allegations of retaliation already appeared in the scheduling order. The district court noted, however, that Bond's complaint did not include a retaliation claim and advised Bond to "amend his Complaint to add a retaliation claim if he in fact intend[ed] to pursue such a claim in the case."

Bond consequently filed a motion to amend his complaint, citing the district court's direction. In his proposed amended complaint, Bond specified that the Air Force's refusal to process his EEO complaint occurred in January 2003. He also alleged that the Air Force's inaction was willful and intentional and that he "believe[d] that the grievance filed with the Union and the arbitration hearing which upheld the agency's termination of the Plaintiff in 2001 is what motivated the agency to fail to comply" with his initial request to process his EEO complaint.

7

The Air Force filed a response stating that it did not oppose Bond's motion to amend his complaint.

The Air Force moved to dismiss Bond's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). The Air Force's brief in support of its motion provided details about how Bond had grieved his termination through his union and the arbitration process. Based on those facts, the Air Force moved to dismiss Bond's complaint in this civil action for failure to exhaust administrative remedies under the Civil Service Reform Act ("CSRA").[4] Specifically, the Air Force argued that Bond did not file his EEO complaint with the Air Force within 45 days of the alleged discrimination, as required by 29 C.F.R. § 1614.107(a)(2).

In response, Bond did not dispute the facts set out in the Air Force's brief that he was terminated in October 2001 and that he did not contact his EEO counselor until January 2, 2003. Instead, Bond argued that the 45-day limitations period did not begin to run until he knew or should have known of the alleged discrimination. Bond argued that it was only on November 19, 2002, after he received the letter from his union counsel and had the conversation with the

---

[4]The Air Force also argued that Bond had elected to pursue his claims to a final decision through the union-grievance-arbitration process and thus was precluded from pursuing his claims under Title VII. The district court did not reach this issue, but granted dismissal on exhaustion grounds. The Air Force raises this election of remedies argument again on appeal. Because we affirm the district court's basis for dismissal, we need not reach that legal issue either.

8

unidentified third party that he was "alerted to the possibility" that the racially neutral policy was being applied in a racially discriminatory manner.

The district court dismissed Bond's complaint, finding that Bond failed to initiate contact with the Air Force's EEO counselor within the 45-day limitations period and thus failed to exhaust administrative remedies. In so doing, the district court noted that "[a]lthough there are no affidavits or other evidence in the record to show the history of Plaintiff's challenges, Plaintiff does not challenge the outline set forth by Defendant in his Motion to Dismiss, and concedes the relevant facts." Specifically, Bond did not dispute that he was terminated on October 12, 2001 and did not notify the Air Force's EEO counselor of his discrimination claim until January 2, 2003, over fourteen months later.

Since Bond admittedly did not comply with the 45-day limitations period, the district court examined whether Bond had alleged a basis for tolling of the 45-day limitation. Bond's allegation was that he did not and reasonably should not have known until November 19, 2002 that others were not terminated when they failed the drug test. According to Bond, he only learned of this fact when he received a letter dated November 15, 2002, from his attorney on November 19, 2002, which described the Air Force's policy as a "consistent policy of firing just about everyone in a testing designated position who tests positive for drugs."

9

Bond alleged that he reasonably should have known of the alleged discrimination only after he received his attorney's letter with the arbitration decision and that letter and decision were reviewed by an unidentified third party who had inside knowledge of "the Agency's history of racial discrimination through covert and subtle means."

In light of the uncontested facts and allegations, the district court concluded that Bond had not shown good cause for tolling the 45-day limitations period. Specifically, the district court explained that Bond's "vague reference to a conversation with an unidentified individual" was insufficient to meet his burden to show tolling was warranted. The district court further stated that "[i]n the absence of any detail as to the new facts confided by this mysterious informant, the Court has no way to determine whether those facts should or should not have been apparent to a person with a reasonably prudent regard for his rights." Bond filed this appeal.

## II. DISCUSSION

### A. Dismissal of Bond's Complaint

The district court dismissed Bond's complaint with prejudice pursuant to Rule 12(b)(6) for failure to state a claim.[5] Bond does not dispute that he did not

---

[5]We review de novo the dismissal of a complaint under Rule 12(b)(6) for failure to state a claim. We review a district court's refusal to grant leave to amend the complaint for abuse of

contact the Air Force's EEO counselor within the 45-day limitations period. Rather, the sole issue is whether Bond has alleged facts that are legally sufficient to toll the 45-day period for fourteen months. In deciding that issue, the district court considered many matters outside Bond's complaint, including the letter from Bond's union attorney discussing the results of the arbitration and Bond's alleged conversation with an unidentified "insider" that led him to suspect discrimination. However, even accepting as true all of Bond's additional allegations raised in response to the motion to dismiss, we conclude that Bond has failed to allege facts that would be legally sufficient to establish tolling until November 19, 2002 (which is necessary to make the contact on January 2, 2003 timely).

The problem for Bond in this regard is Fluellen's testimony that was referenced in the arbitrator's decision sent to Bond by his union counsel. Specifically, Fluellen testified that one or two Air Force employees at Warner Robins had not been fired after a positive drug test. The arbitration hearing, which Bond attended with counsel, occurred on August 26, 2002. If the information in Fluellen's testimony was capable of provoking Bond's inquiry on November 19, 2002, it was equally so on August 26, 2002, when it was given. Thus, we conclude

---

discretion, but review <u>de novo</u> "the underlying legal conclusion of whether a particular amendment to the complaint would be futile." <u>Harris v. Ivax Corp.</u>, 182 F.3d 799, 802 (11th Cir. 1999).

that Bond reasonably should have known as early as August 26, 2002 that he might have a discrimination claim.[6] However, Bond did not contact the Air Force's EEO counselor within 45 days of this date, or by October 10, 2002. Accordingly, under Bond's own allegations, his January 2, 2003 contact with the EEO counselor was untimely. Therefore, the district court did not err in dismissing Bond's complaint for failure to state a claim. See Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1213 (11th Cir. 2001) (affirming district court's dismissal of complaint and denial of leave to amend where additional allegations in the plaintiff's brief would not have stated a claim).

## B.    Denial of Motion for Leave to Amend

Bond also argues on appeal that his retaliation claim was timely and thus should not have been dismissed. However, Bond's dismissed complaint did not contain a retaliation claim. Furthermore, the district court denied Bond's outstanding motion for leave to amend his complaint to add a retaliation claim when it stated in the dismissal order that "[a]ll other pending motions" were dismissed. Therefore, there is no retaliation claim for consideration on appeal.

---

[6]We recognize that Bond asserts he did not have enough information until he talked to a third party allegedly on the same day he received his counsel's letter with the arbitrator's decision. However, as noted by the district court, Bond does not identify the third party or give any facts confided by the mysterious informant. In any event, given that Bond had a full arbitration hearing and that Fluellen acknowledged in the hearing that a few others had not been fired after a drug test, Bond reasonably should have known at that time that he had not been treated the same as others.

12

Construing Bond's appellate brief liberally to include a challenge to the district court's denial of his motion for leave to amend, we find no error.[7] Bond sought to amend his complaint to allege that the Air Force had retaliated against him by refusing initially to process his EEO complaint. He also stated that the refusal was motivated by Bond's filing a union grievance and initiating arbitration. However, Bond also explained in his response to the motion to dismiss that his grievance and the resulting arbitration did not involve allegations of race or age discrimination, but only allegations that the sanction of termination was too severe. Thus, it is apparent from Bond's own pleadings that Bond's activity in filing a grievance and in participating in arbitration did not constitute statutorily protected activity under either Title VII or the ADEA. See 42 U.S.C. § 2000e-3(a) (prohibiting retaliation for an employee's opposition to an employment practice made unlawful by Title VII or an employee's participation in an investigation, proceeding or hearing under Title VII); 29 U.S.C. § 623(d) (prohibiting retaliation for an employee's opposition to an employment practice made unlawful by the ADEA or an employee's participation in an investigation, proceeding or litigation under the ADEA).

---

[7]We review for abuse of discretion a district court's denial of leave to amend and review de novo a district court's determination that amendment would be futile. Freeman v. First Union Nat'l, 329 F.3d 1231, 1234 (11th Cir. 2003).

### III. CONCLUSION

For the above reasons, we affirm the district court's dismissal of Bond's complaint and the denial of Bond's motion for leave to amend his complaint to add a retaliation claim.

**AFFIRMED.**